PORTO RICAN LEAF TOBACCO Co., demandante y apelante, *v.* MOISÉS COLÓN, demandado y apelado.

Núm. 7022.—*Sometido:* Enero 24, 1936. *Resuelto:* Julio 6, 1936.

*J. Henri Brown, C. Ruiz Nazario, G. E. González* y *G. Benítez Gautier,* abogados de la apelante; *L. Santiago Carmona,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

La Porto Rican Leaf Tobacco Co. apela de una sentencia adversa. dictada en un procedimiento de desahucio y sostiene que la corte de distrito cometió error al negarse a admitir como prueba la copia de carbón de una carta. Tomamos el siguiente extracto de la transcripción de la evidencia:

"Dte.—Retiramos el documento. Y ofrecemos como prueba una carta, copia en carbón, sacada al mismo tiempo que el original, de fecha 20 de octubre de 1934, dirigida al señor Moisés Colón, Comerío, Puerto Rico, preparada bajo la dirección del abogado que habla y debidamente cursada por correo por este abogado.

"Ddo.—Nos oponemos a la admisión de ese documento. No consta que se hubiera pedido a la corte que se citara a la persona que iba dirigida esta carta, al señor Moisés Colón.

"La Corte.—La Corte deniega el documento, visto el artículo 24 de la Ley de Evidencia.

"Dte.—Tomamos respetuosamente excepción."

Asumiendo, sin resolverlo, que la manifestación del letrado equivalía a "probarse que la carta fué debidamente cursada por correo" dentro del concepto del artículo 84 de la Ley de Evidencia, el juez de distrito debió haber admitido la copia de carbón, si por otra parte no era inadmisible. *Puig* v. *Soto,* 18 D.P.R. 132, 139. Sin embargo, la carta no está ante nos y en vista de la conclusión a que hemos llegado sobre otros aspectos del caso, el error aquí planteado no es suficiente motivo para revocar la sentencia.

Otros señalamientos son:

"2. La corte *a quo* erró al resolver que salta a la vista el conflicto de título en este caso.

"3. La corte sentenciadora erró al resolver que el demandado en este caso suministró el principio de prueba necesario para establecer conflicto de título.

"4. La corte sentenciadora erró al apreciar la prueba sometida en el presente caso por el demandado."

En procedimiento ejecutivo instado por la Porto Rican Leaf Tobacco Co. contra Rafael Cruz y su esposa Juana María Díaz y Sánchez, un "special master" vendió a la compañía tabacalera 9.33 cuerdas de terreno "lindantes al norte con la carretera que conduce de Bayamón a Comerío y con parcela perteneciente a José Moisés Colón Virella; por el este con finca de Portalatina Cruz Rivera; por el sur con el río La Plata; y por el oeste con el río La Plata y con terrenos de Juan Oliveros." En el procedimiento de desahucio la compañía tabacalera alegó que Moisés Colón era dueño de una parcela de terreno que radica dentro de las 9.33 cuerdas, que se describe así:

"Rústica, solar en el barrio Palomas, de Comerío, que mide 14 metros 93 centímetros, o sean 49 pies por su frente y por su espalda, y por cada uno de sus costados derecho e izquierdo mide 62 pies con 3 pulgadas, o sean 18 metros 96 centímetros, tomando esta medida desde el mismo centro de la cuneta sur de la carretera; y esas medidas totalizan una superficie plana de 283 metros 7 centímetros cuadrados, equivalentes a siete céntimos de una cuerda, iguales a 3 áreas, 7 centiáreas, 3 miliáreas, colindando por el norte, que es su frente, con la carretera de Comerío a Bayamón; y por el Oeste o derecha entrando, Este o izquierda y Sur o fondo, con el resto de la finca propiedad de Rafael Cruz Díaz. Contiene una casa que en parte es de una planta y en su parte posterior es de 2 plantas, construída toda la planta principal de maderas con techo de hierro galvanizado sobre base de concreto, y mide siete metros 10 centímetros de frente por 11½ metros de fondo, incluyendo el balcón, teniendo anexo por su costado derecho en el extremo suroeste un departamento construído de concreto armado con techo de hierro galvanizado, que más o menos mide 4 metros 90 centímetros de frente o ancho por 4½ metros de

fondo o largo, estando destinado para cocina y cuarto de baño.; y la planta baja tiene igual frente o ancho que el cuerpo principal y mide más o menos 4 metros de fondo o largo, siendo construída de concreto armado.''

.La compañía tabacalera también alegó que luego de iniciado el procedimiento ejecutivo sumario, el 7 de agosto de 1931, Moisés Colón extendió la cerca para que incluyera la parcela que ahora está en controversia y que se describe en la demanda del siguiente modo:

· ''Parcela de terreno ubicada en el barrio Palomas, de la municipalidad de Comerío, que mide 46 metros por el norte en colindancia con la carretera Bayamón–Comerío; al sur, en 50 metros con terrenos de la Porto Rican Leaf Tobacco Company; al Este, en 26 metros 50 centímetros con más terrenos de la Porto Rican Leaf Tobacco Company; y al oeste en 26.62 metros con más terrenos de la propia Porto Rican Leaf Tobacco Company.''

La cuestión en controversia es si la contención de dueño planteada por el demandado es tan evidentemente insubstancial e insostenible que no merezca seria consideración o si la prueba en apoyo de la misma era suficiente para suscitar una cuestión digna de ser resuelta por las cortes. Es cuestión bien establecida que reclamaciones opuestas de título, si son *bona fide,* no pueden ser juzgadas y resueltas en un procedimiento de desahucio. Un pretexto baladí a ese respecto será pasado por alto. Una cuestión aparentemente *bona fide,* sostenida por prueba que sea suficiente para demostrar algún color de la existencia de un derecho, evidencia suficiente para presentar una cuestión genuina de título, justificará y requerirá la desestimación del procedimiento. No nos detendremos a revisar los casos ya resueltos. Véanse Sentencia del Tribunal Supremo de España del 12 de mayo de 1919 (146 Jurisprudencia Civil 281, 288); *Segundo González* v. *Colón,* 49 D.P.R. 557; *Lippitt* v. *Llanos,* 47 D.P.R. 269; *Laureano* v. *Díaz,* 48 D.P.R. 705; *Brunet* v. *Corte,* 45 D.P.R. 901, 903; *Schuck* v. *Verdejo,* 43 D.P.R. 68, 955; *Rubert Hnos.* v. *Hernández,* 43 D.P.R. 960; *Mojica* v. *Gon-*

*zález*, 43 D.P.R. 999, 1000; *Ermita* v. *Collazo*, 41 D.P.R. 596; *Sucn. Dávila* v. *Collazo*, 41 D.P.R. 174.

Moisés Colón, demandado en el presente caso, declaró que Rafael Cruz poseía dos cuerdas de terreno y que había comprado más, aumentando el área a nueve cuerdas; que el demandado y su familia vivían en una casa que anteriormente era de su propiedad y que ahora pertenece al Pueblo de Puerto Rico y en otra casa construída por él en terreno contiguo al de la propiedad del gobierno; que se hallaba en posesión de esta parcela como dueño de la misma; que la había cercado y sembrado; que la adquirió en 1922 o 1923; que en adición a la casa construyó hacia el oeste un garage con base de concreto y una superestructura de hierro galvanizado; que el garage fué destruído por el ciclón de San Felipe, pero que quedan los escombros; que construyó el garage en 1922 o 1923 y continuó en posesión del mismo hasta que éste fué destruído en 1928; que él estaba en posesión de las dos casas, del garage y como de ¼ de cuerda de terreno; que él había estado en posesión de las parcelas marcadas "x" e "y" en un plano introducido como prueba por la demandante desde 1921; que el testigo había sembrado yerba y plátanos y cuidado una vaca; que había vivido allí con su familia desde 1921; que adquirió el terreno de Rafael Cruz (identificándolo en el plano); que le hizo a Cruz un regalo de $50.00; que antes de efectuarse esta transacción había una parcela perteneciente a un pariente de Cruz que deseaba venderla al testigo; que Cruz estaba interesado en la materia y prometió darle al testigo la parcela que éste necesitaba; que ésta se marcó en 1921 en lo que se otorgaba la escritura; que don Belisario Boscana, de Comerío, redactó un documento que más tarde debía convertirse en una enajenación formal cuando se aclarara el título de las dos cuerdas de las cuales él era administrador; que entonces vino el ciclón de San Felipe y destruyó la casa y se perdió no sólo el documento, sino todo, aunque el volumen en que todos los

documentos habían estado fué hallado; que Boscana lo tenía; que el Lic. Rodríguez lo había leído; que el documento trataba de la venta de una parcela contigua de terreno en adición a la casa; (en la repregunta) que la casa fué adquirida por El Pueblo de Puerto Rico por las contribuciones; que la Santini Fertilizer Co. la había ejecutado previamente; que Finlay también había ejecutado la hipoteca o tratado de ejecutarla; que la casa y solar que habían sido previamente inscritos eran la propiedad envuelta en los procedimientos iniciados por el Pueblo de Puerto Rico y la Santini Fertilizer; que las dos parcelas fueron adquiridas al mismo tiempo, primero la casa y luego el solar en que la misma está enclavada; que la venta en que don Belisario intervino fué la del solar contiguo a la casa; que esto ocurrió casi inmediatamente después de haberse adquirido la casa y el solar; que el testigo no puede especificar el número de días o meses o años, en 1922 o 1923; que no puede especificar la fecha exacta; que fué en 1922 o 1923; que en el curso de la transacción Cruz cedió el terreno al testigo, allá para el 1923, en 1922 o 1923; que Rafael Cruz cedió el terreno contiguo al testigo luego de otorgar la escritura de la casa y el solar; que el testigo no ha cedido; que él adquirió la finca contigua después de obtener la casa y solar; que se inscribieron la casa y el solar; que el traspaso de la propiedad contigua fué hecho en un documento extrajudicial; que la enajenación formal del solar fué otorgada más tarde; que el documento extrajudicial fué otorgado luego, unos días más tarde, pero que el testigo no puede decir cuántos; que el testigo le hizo a Cruz un regalo de $50.00; que Cruz no quería aceptar nada; que no recuerda cuánto pagó por la casa y el solar; que la palizada estaba allí cuando la compañía tabacalera tomó posesión; que el terreno en controversia estaba cercado por ésta.

El testigo fué luego interrogado, primero por la corte y después por el letrado de los demandados como sigue:

"La Corte.—Dígame, testigo, qué fué lo primero que usted compró allí?

"T. Lo primero que yo compré fué la casa.

"P. Esa casa es de usted hoy?

"R. Hoy no.

"P. ¿De quién es hoy esa casa?

"T. Del Pueblo de Puerto Rico.

"P. ¿Usted sabe quién habita esa casa?

"T. Yo con mi familia.

"P. ¿Qué fué lo segundo que usted compró?

"T. El solar de la casa.

"P. ¿Cuánto tiempo después de usted haber comprado la casa compró el solar, más o menos como cuánto tiempo?

"T. La casa fué en el 1920 y el solar en el 1921. No tengo seguridad si fué en el 1922 o 1923.

"P. A ese solar con la casa, ¿qué pasó con la casa y el solar?

"T. Ese solar y casa yo se lo hipotequé a la casa Finlay en el 24 o 25.

"P. Yo quiero saber el final, ¿qué pasó con la casa y el solar, que la casa se la llevó el Pueblo de Puerto Rico, no es eso, y el solar?

"T. La casa y el solar, yo quiero explicarle, es · un enredo, cuando . . . .

"P. Yo quiero conocer el final de todo, ¿fué que con la casa se quedó El Pueblo de Puerto Rico?

"T. Por las contribuciones.

"P. ¿Y el solar?

"T. También.

"P. ¿Qué fué lo tercero que ocurrió con respecto al solar y casa y con respecto a lo demás? Usted me ha estado hablando de dos casas, ¿de la otra casa?

"T. En esa época al yo adquirir el solar . . . .

"P. ¿En qué época adquirió el solar?

"T. Del 22 al 23.

"P. ¿De modo que usted adquirió el solar de la segunda casa casi en la misma época que usted perdió la otra casa y el solar?

"T. Posteriormente.

"P. Entonces, ¿usted adquirió un solar antes de perder sus otras propiedades?

"T. Antes de perderlo.

"P. Ese solar que usted compró, ese segundo solar, ¿de quién era?

"T. De Rafael Cruz Díaz.

"P. ¿Ese es el que usted dice que compró con un documento privado?

"T. Ese sí.

"P. ¿En ese solar había casa?

"T. No, señor.

"P. ¿Actualmente la hay?

"T. Sí, señor.

"P. ¿Quién la construyó?

"T. Yo.

"P. Ese solar, ¿qué mide?

"T. No tengo una exactitud, como un cuarto de cuerda.

"P. Cuando compró ese solar, ¿usted lo cercó?

"T. Sí, señor.

"P. ¿Con qué lo cercó?

"T. Con alambres de púa y tela metálica.

"P. Esa tela metálica y alambres de púa, ¿están allí todavía?

"T. Sí, señor.

"P. ¿Entonces usted construyó la casa?

"T. Sí, señor.

"P. ¿Quién vive esa casa hoy?

"T. Yo mismo, mi familia es numerosa y estamos ocupando las dos.

"P. ¿De modo que usted tiene parte de su familia en la casa que usted últimamente construyó y parte en la casa del Pueblo de Puerto Rico?

"T. Del Pueblo de Puerto Rico hoy.

"P. ¿Usted ocupa sólo la casa que es del Pueblo de Puerto Rico u ocupa también, además la casa y el solar?

"T. Sí, señor.

"P. En síntesis, ¿ocupa las dos casas y los dos solares?

"T. Sí, señor, ya estoy notificado del Pueblo de Puerto Rico.

"La Corte: Nada más.

"Demandado: En este otro solar que usted ha explicado, ¿qué hay al lado oeste?

"T. Anteriormente tenía un garage con base de concreto y la parte de arriba de hierro galvanizado.

"P. ¿Todavía quedan los escombros?

"T. Sí, señor."

El letrado Francisco Rodríguez Alverio, mencionado por el demandado Colón mientras ocupaba la silla testifical, declaró: que en 1924 el testigo vivía en Nueva York y en 1925 en Comerío; que conoce a Rafael Cruz y a Moisés Colón;

que ejerce su profesión en Comerío; que en 1928 el testigo le tomó en arrendamiento a Rafael Cruz la finca objeto de este litigio; que cuando fué a tomar posesión de la misma, Rafael Cruz le explicó o le indicó los puntos que cubrían la finca esa con la idea de indicarle la parte que era del convenio y para indicarle la parcela perteneciente a Moisés Colón, cercada entonces con alambre de púas; que la finca ocupada por Moisés Colón se hallaba en la parcela arrendada por el testigo; que la había visto el día del juicio, así como el día antes; que es la misma finca tomada en arrendamiento por el testigo a Rafael Cruz; que en 1926 Rafael Cruz no le mostró ningún documento; que Moisés Colón se la mostró al testigo y le dijo que deseaba tener en su poder todos los documentos que él (Colón) había entregado a Belisario Boscana y que había dejado en la oficina de Celestino J. Pérez; que Belisario, que era un "curial", un escribano, había muerto alrededor de aquella época; que Belisario no trabajaba con Pérez; que el testigo fué a trabajar en la oficina en que lo había hecho Belisario; que vió un documento privado otorgado por Cruz y por Colón relativo a un solar cuyas medidas no recuerda; que ellos hablaron con el testigo acerca del mismo cuando éste le tomó en arrendamiento la finca por dos años; que el testigo conocía la finca bien; que se trajo un agrimensor para medirla; que contenía 9.40 cuerdas, sin incluir la propiedad de Moisés Colón; que cuando el río crece cubre ciertos arenales sembrados de malojillo; que cuando el testigo tomó la finca en arrendamiento había una "rejoya", según se le llama en el campo, unas .40 de cuerda más o menos, sembrada de malojillo que había desaparecido totalmente, que está debajo del río; que fué medida cuando se dió posesión de la finca al testigo; que ahora no había sido medida; (en la repregunta) que el testigo regresó de los Estados Unidos en junio de 1925 y fué a Comerío en julio; que alquiló la propiedad en 1928 a razón de $40 mensuales; que vió el documento privado en 1926, un año después de ir a Comerío,

cuando se hizo cargo de los asuntos de Colón; que él no hizo nada en relación con el documento; que Colón dió instrucciones al testigo de recoger los papeles que habían estado en poder de Belisario; que Colón quería tenerlos en su poder; que Colón no le ordenó que los elevara a escritura pública; que el testigo fué a buscar los documentos con el objeto de entregarlos a Colón, y que para cerciorarse de si los mismos pertenecían a Colón, el testigo tuvo que leerlos; que no recuerda la fecha exacta del documento privado, si fué en el 1922 ó 1923; que fué para aquella época cuando el testigo tomó a su cargo los asuntos de Colón; que si el Lic. Celestino J. Pérez redactó la escritura número 69, otorgada en Comerío el 17 de julio de 1923, el testigo no la vió; que el día antes del juicio el río no estaba crecido, estaba normal, pero que cubría la mejor parte de la finca, .40 de cuerda; que cuando el testigo tomó la finca en arrendamiento el río cuando estaba normal no cubría aquella parte de la misma.

Rafael Cruz declaró que había sido dueño de nueve cuerdas y céntimos de terreno en Palomas; que le vendió la finca a Moisés Colón porque había comprado dos cuerdas, media a media cuerda; que el testigo compró cuatro o cinco cuerdas a José Cruz y a otros y que cuando adquirió las primeras dos cuerdas había cedido un solar allí que pasó por varias manos y vino a poder de Moisés Colón, y éste quiso comprar la finca; que el testigo no recuerda la fecha—hace 16 o 20 años; que el testigo compró en 1921; que fué después del 1916 ó 1918, del 21 al 23; que Colón tenía un negocio con José Cruz sobre la finca; que compró dos cuerdas a Carmen Rivera y no pudieron hacer documento sobre eso; que luego el testigo compró las siete cuerdas; que Colón estaba negociando con José Cruz y que como el testigo había adquirido las dos cuerdas le dijo a Colón: "Mire, Moisés, cédame esas dos cuerdas y con eso solamente se me cedería esto," y entonces aquél le contestó: "Y si usted me cede un cuadro;" que el testigo le dió el cuarto de cuerda; que él no quería aceptar nada por esto, pero que Colón le hizo coger $50 como

regalo; que Belisario Boscana, que falleció en Comerío, redactó un documento extrajudicial y el testigo convino en otorgar una escritura de enajenación cuando Colón lo deseara; que no puede decir si éste era el terreno que Colón ocupa ahora; que era un cuarto de cuerda más o menos—no fué medida; (en la repregunta) que su hermano Taquito está encargado todavía de los muebles del testigo y que éste ocupa la casa que está en la propiedad, algunas sillas, mesas y camas; que no puede decirlos todos, pero que tiene bastantes muebles; que el márshal de la Corte Federal estuvo allí; que el testigo manifestó al márshal que él podía entregar la posesión si se veía obligado a hacerlo así y que la cuestión de entrega estaba pendiente en manos del Lic. Martínez Dávila; que la cuestión está aún pendiente en lo que al testigo se refiere porque él no tiene dinero con qué seguir adelante; que no recuerda la fecha en que adquirió las dos cuerdas; que el testigo compró primeramente dos cuerdas, nueve cuerdas y céntimos en total, primero dos cuerdas y luego el resto, un total de nueve cuerdas y céntimos; que antes de esto ocurrió el asunto de la venta a Colón, antes de la negociación con José Cruz, porque el testigo debía cederle un pedazo de terreno contiguo a la casa; que el testigo marcó unos céntimos, un cuarto de cuerda más o menos; que como el testigo tenía las dos cuerdas Colón vino a verle y entonces hablaron; que entonces él le dijo al testigo: ''Yo lo que intereso es un cuadro, un cuadro más o menos;'' que el testigo no recuerda la fecha; que él le había regalado un solar a su hermano Taquito; que le hizo una escritura del solar a Colón; que el solar había estado pasando de manos y cuando Colón compró la casa el testigo estaba por ceder el solar y hacer la escritura; que el testigo le vendió a Colón un solar contiguo a una casa que estaba enclavada en un solar que el testigo le había regalado a su hermano y que éste le había vendido a Juan Longo; que después de la cesión del cuadro a Colón, el testigo otorgó una escritura traspasando a Colón el solar que previamente había sido cedido y que se venía permutando; que el hermano del testigo

lo vendió y el testigo otorgó la escritura; que cuando vino a poder de Colón, que adquirió la casa, el testigo tuvo que otorgar la escritura; que el testigo cree que esto ocurrió antes de cederse el cuadro, mas no recuerda; que fué para la época en que se hizo la transacción del solar que Colón empezó a hacer negociaciones sobre la casa; que el testigo no recordaba si el traspaso del cuarto de cuerda fué después de dicha transacción; que el solar fué un regalo, pero que Colón hizo que el testigo aceptara la suma de $50 pero no fueron por el solar en que la casa estaba enclavada; que el testigo lo había cedido a su hermano tantos años antes y su hermano vendió la casa primero; que al otorgar la escritura de este solar el testigo no recibió dinero alguno porque el solar en que estaba ubicada la casa había sido un regalo del testigo a su hermano y éste vendió la casa y tenía derecho a una escritura de enajenación; que la casa estuvo mucho tiempo sin inscribirse; que el solar fué un regalo al hermano del testigo y Colón adquirió de otro; que Colón dió al testigo $50 por la otra finca.

El agrimensor que poco antes del juicio había medido la finca y redactó el plano ofrecido como prueba por la demandante, declaró como testigo de la demandante sobre la existencia de una antigua verja de tela metálica y alambre de púas, así como sobre la existencia de ciertos árboles por la guardarraya de la parcela en controversia y sobre la existencia dentro del cercado de los cimientos de concreto de lo que una vez había sido garage. El testimonio del demandado es así corroborado hasta cierto punto por el testimonio de este testigo. Permanece prácticamente incontrovertido por el testimonio de cualquier otro testigo. Tomado en su totalidad y corroborado hasta cierto punto por el testimonio del agrimensor de la demandante, bastaba para justificar la conclusión a que llegó el juez de distrito, si no tenía razón para creer, por el comportamiento del demandando y de sus testigos o por alguna otra razón, que su declaración había sido inventada y aprendida de memoria. No hallamos en la trans-

cripción mecanografiada tal prueba de mendacidad que exija la revocación de la sentencia.

*Debe confirmarse la sentencia apelada.*

Los Jueces Asociados Señores Córdova Dávila y Travieso no intervinieron.