Sucesión de Pedro Pedroza Trías, conocido por Pedro Julio Trías, etc., demandante y apelada, *v.* Cándida Martínez, demandada y apelante.

Núm. 8916.—*Sometido:* Mayo 17, 1944. *Resuelto:* Julio 26, 1944.

*Miguel Rodríguez Alberty*, abogado de la apelante; *Armando Orraca López*, abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Esta es una apelación contra sentencia a favor de la demandante en un pleito de desahucio. La demandada apelante alega que la corte de distrito cometió error al no desestimar la demanda por el fundamento de que en la prueba se estableció un conflicto de títulos.

La demandante es la Sucesión de Pedro Pedroza Trías. La demandada es Cándida Martínez. Esta última es tía y madre de crianza de Sara Pérez, quien fué concubina de Pedroza durante un número de años con anterioridad a la muerte de Pedroza. Este pleito se trae por la Sucesión de Pedroza para lanzar a la demandada de la posesión de una casa y solar en que se admite vivían Pedroza, su concubina y su tía, la demandada, al ocurrir la muerte de aquél.

En su contestación la demandada niega que Pedroza fuera dueño del solar y casa en cuestión. Alega que la casa "pertenece a la demandada por haberla construído con dinero propio, habiendo pagado de su propio peculio todo el material de la misma, así como la mano de obra . . . ". También alega la demandada que "el solar descrito fué adquirido por Pedro Luis Trías mediante compra a The National City Bank of New York habiendo la aquí demandada puesto en manos del Sr. Trías el importe de la compra bajo la condición expresa de que el Sr. Trías traspasara a la aquí demandada el descrito solar si no pudiere o estuviere en condiciones de devolverle a la aquí demandada el importe de la compra, hecho que no efectuó a pesar de las diligencias practicadas al efecto."[1]

Con referencia al solar, la prueba de la demandada no sostiene las alegaciones de su contestación. Por el con-

---

[1] A Pedroza se le conocía por varios nombres, incluyendo el de Pedro Luis Trías.

trario, ella meramente declaró que hizo a Pedroza un préstamo de $132, el precio de venta del solar, que medía 11 × 12 metros y costaba a $1 el metro. Otros testigos de ambas partes declararon al mismo efecto. Y la propia demandada radicó demanda ante la corte municipal en cobro de su dinero, transacción que la demandada describe sencillamente como un préstamo a Pedroza. Si bien la escritura de solar, que fué presentada en evidencia y que demuestra a Pedroza como el comprador del solar, no impediría necesariamente a la demandada de demostrar su título al mismo, ella no ha demostrado tal cosa. El hecho de que la demandada le prestara a Pedroza el dinero con que comprara el solar, por sí solo, no puede constituir prueba de que la demandada tiene título al solar. La corte inferior por tanto estuvo claramente correcta al resolver que no se estableció por la propia demandada conflicto de títulos en relación con el solar. (*Noriega* v. *Corte de Distrito,* 60 D.P.R. 454).

Sin embargo, la prueba en cuanto a la casa fué enteramente diferente. Sara Pérez, la concubina de Pedroza, declaró que la demandada, quien es su tía y madre de crianza, construyó la casa en cuestión y se llevó a Pedroza y a ella a vivir en la casa en su compañía debido a que Pedroza era pobre y no podía mantener ni a su concubina ni a sí mismo. Declaró que la demandada también le había dado a Pedroza el dinero para comprar el solar. Declaró—y esto fué corroborado por la demandada y por otros sin que la demandante lo impugnara—que la demandada había recibido en el pasado considerables sumas de dinero del Gobierno Federal en pago de bonos, seguro y pensión debido al hecho de que su hijo había servido en la Primera Guerra Mundial. Declaró que la demandada continuaba recibiendo de esta fuente aproximadamente $60 mensuales y que fué este dinero recibido del Gobierno Federal lo que le permitió tanto adelantar el dinero para el solar como el construir la casa en el mismo.

Un carpintero declaró por la demandada que él fué el maestro carpintero que construyó la casa; que la demandada

le pagaba periódicamente por su trabajo; que cuando se necesitaba material la demandada adelantaba el dinero para el mismo. Otro carpintero declaró al mismo efecto, añadiendo que Pedroza algunas veces iba a buscar el material, que la demandada siempre pagaba.

La propia demandada declaró en idéntica forma. Añadió que durante varios meses le daba dinero de tiempo en tiempo a Pedroza y al maestro carpintero, según lo recibía del Gobierno Federal, para que le compraran materiales para la casa; que si Pedroza cogió algún material a cuenta lo hizo a iniciativa propia, toda vez que ella le daba dinero para materiales siempre que él lo pedía; que tenía confianza en él y le confió todo estos asuntos; que invirtió alrededor de $800 en la construcción de la casa; que a pesar de que el recibo de las contribuciones para el 1941–42 demostraba que Pedroza había pagado dichas contribuciones ascendentes a $7.46, ella le había dado el dinero para pagarlas; que había invertido más dinero en la casa desde la muerte de Pedroza; y que desde que Pedroza murió había pagado personalmente las contribuciones del solar y la casa.

Si bien la demandante presentó una escritura traspasándole el solar a Pedroza, no se presentó tal documento, o aparentemente nunca existió, en relación al título de Pedroza sobre la casa. El recibo de contribuciones, ya mencionado, y un plano y permiso de construcción, que tenían el nombre de Pedroza como dueño, fueron también presentados en evidencia por la demandante. La madre de Pedroza declaró que ella había pagado las contribuciones de $7.46 después de su muerte pero que no tenía consigo dicho recibo. La madre, hermano y padre de crianza de Pedroza, y otro carpintero, quien afirmó que había sido el maestro carpintero, declararon que la casa había sido construída por Pedroza y que éste había pagado la mano de obra y comprado el material.

La demandante trajo como testigo de *rebuttal* a un comerciante quien declaró que había vendido a Pedroza material

que se usó en la construcción de la casa; que Pedroza algunas veces pagó en efectivo y otras veces cargó a cuenta sus compras, por las cuales más tarde pagó en efectivo a razón de $4 ó $5 semanales.

También hubo alguna controversia en cuanto a la fecha en que la demandada vino a vivir en la casa en cuestión. Afirmó que se mudó a ella tan pronto como fué terminada, con Pedroza y su sobrina. Los testigos de la demandante, por otro lado, declararon que Pedroza primeramente vivió solo en la casa por algunos meses, entonces se trajo a su concubina a vivir con él, y luego el día de su muerte la demandada se mudó a la casa.

Es incontrovertible el hecho de que Pedroza no dejó propiedad otra alguna; que no tenía un oficio regular antes de mudarse a la casa de la demandada hace un número de años para vivir allí junto a su concubina; que por varios años después tenía una pequeña relojería que se vendió por $8 ó $10 cuando murió.

La opinión de la corte de distrito finaliza como sigue:

"Resolviendo el conflicto que pueda haber en la prueba de ambas partes y apreciando en total la prueba documental y testifical, esta Corte entiende que no existe conflicto de título alguno en este caso, ya que si bien Pedro Pedroza Trías recibió de manos de la demandada todo o la mayor parte del dinero que se utilizó en la compra del solar y la *construcción de la casa,* sin embargo, las entregas del dinero se hicieron en tales condiciones, de acuerdo con la prueba, según la interpreta esta Corte, que a lo más existió un contrato de préstamo si no fué una donación en posible consideración a las relaciones entre Pedro Pedroza Trías y la sobrina de la demandada." (Bastardillas nuestras).

No podemos convenir con la corte inferior en que de la prueba aquí sintetizada no se establecieron genuinas reclamaciones en conflicto en cuanto al título de la casa. "La cuestión en controversia es si la contención de dueño planteada por el demandado es tan evidentemente insubstancial e insostenible que no merezca seria consideración o si la

prueba en apoyo de la misma era suficiente para suscitar una cuestión digna de ser resuelta por las cortes. Es cuestión bien establecida que reclamaciones opuestas de título, si son *bona fide,* no pueden ser juzgadas y resueltas en un procedimiento de desahucio. Un pretexto baladí a ese respecto será pasado por alto. Una cuestión aparentemente *bona fide,* sostenida por prueba que sea suficiente para demostrar algún color de la existencia de un derecho, evidencia suficiente para presentar una cuestión genuina de título, justificará y requerirá la desestimación del procedimiento.''(²) Sabemos que ''no basta la mera alegación de título por parte del demandado, sí que es necesario que presente por lo menos un principio de prueba''(³), y que ''es preciso que de las alegaciones y de la prueba de la parte demandada surjan hechos suficientes para demostrar que sus pretensiones de título no están desprovistas de fundamento . . . ''.(⁴) Pero somos de opinión que la prueba de la demandada es suficiente para crear un conflicto de títulos verídico y genuino en relación con la casa.

No existe documento escrito sobre el título en relación con la casa. La demandada, a virtud de los servicios prestados por su hijo en la Primera Guerra Mundial, ha recibido miles de dólares del Gobierno Federal. Pedroza era indigente cuando se fué a vivir con la sobrina de la demandada. Vivió con su concubina durante un número de años en la casa de su madre de crianza. Nunca se negó que ella de hecho proporcionó el dinero para el solar. Y si bien hubo algunas insinuaciones de sus familiares de que Pedroza había proporcionado el dinero de su propio peculio para la construcción de la casa, no hubo prueba específica a ese efecto, ni tampoco se hizo esfuerzo alguno para demostrar de qué manera pudo él obtener tales sumas de dinero por sí solo. Hubo abundante prueba por parte de la demandada al efecto de que

---

(²) *P. R. Leaf Tobacco Co.* v. *Colón,* 50 D.P.R. 303, 306; al mismo efecto, *Colón* v. *Colón,* 51 D.P.R. 97.

(³) *Pérez* v. *Castro,* 52 D.P.R. 274, 282.

(⁴) *Cora* v. *Belgodere,* 55 D.P.R. 10, 13.

ella construyó la casa para sí con su propio dinero, y que tenía suficientes medios para ello. Al resolver que "si bien Pedro Pedroza Trías recibió de manos de la demandada . . . el dinero . . . que se utilizó en . . . la construcción de la casa, sin embargo, las entregas del dinero se hicieron en tales condiciones . . . que a lo más existió un contrato de préstamo . . .", la corte de distrito obviamente resolvía un patente conflicto en la prueba, en contra de la demandada, sobre la cuestión del título de la casa, careciendo de autoridad para así hacerlo en un procedimiento sumario de desahucio.

*La sentencia de la corte de distrito será revocada y se dictará nueva sentencia a favor de la demandada.*