SANTIAGO ESPADA, demandante y recurrido, *v.* CARLOS MATEO ROCHE, demandado y recurrente.

*Número:* R-64-253     *Resuelto:* 29 de marzo de 1968

*Francisco Vázquez Gutiérrez,* abogado del recurrente; *José M. Dávila Monsanto* y *Santiago C. Soler Zavala,* abogados del recurrido.

### EN MOCIÓN DE RECONSIDERACIÓN

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

El recurrente ha solicitado la reconsideración de nuestra sentencia en este caso confirmando la dictada por el Tribunal Superior, Sala de Guayama que ordena al recurrente

desocupar una casa de madera en solar del municipio de Salinas, propiedad descrita en la demanda, dentro de un término de 90 días. En nuestra sentencia dictaminamos que:

"Hemos examinado la prueba presentada por ambas partes, y aunque existe el conflicto de evidencia característico entre la aseveración del anterior dueño, hoy precarista, que la operación era una de préstamo con garantía y la aseveración del actual dueño que se trata de una compra, la prueba del actual dueño es más convincente, además de estar robustecida por la escritura de compra."

El hecho que el título del demandante traiga su origen del título del demandado o tenga un origen común con el de éste no impide que el demandado aduzca prueba demostrativa de un conflicto de título al extremo que tal conflicto no puede resolverse en una acción de desahucio. *Roger* v. *Torres*, 71 D.P.R. 852, 855–856 (1950); *Nieves* v. *Ayala*, 66 D.P.R. 787, 790 (1947); *Fontánez* v. *Sierra*, 55 D.P.R. 961, 966 (1940); *Colón* v. *Colón*, 51 D.P.R. 97, 103 (1937).

En *Nieves* v. *Ayala*, supra, dijimos que "Una cuestión aparentemente bona fide, sostenida por la prueba que sea suficiente para *demostrar algún color de la existencia de un derecho*, evidencia suficiente para presentar una cuestión genuina de título, justificará y requerirá la desestimación del procedimiento."

La prueba documental en el caso que nos ocupa consistió de (1) la copia certificada de la escritura Núm. 11, otorgada en 14 de marzo de 1960, ante el notario público José A. Valero Zayas, por virtud de la cual el recurrente vendió al recurrido dos casas de madera, una en solar del municipio de Coamo y la otra en solar del municipio de Salinas la cual es objeto de la acción de desahucio en ese caso, y un solar y casa en el barrio Pasto de Coamo, por la suma de $1,200 la primera, $1,000 la segunda y $1,100 la tercera propiedad, cantidades que el demandado recibió en presencia del notario otorgante; (2) la copia certificada de la escritura Núm. 11,

otorgada en 25 de mayo de 1963, ante el notario público José M. Ayala Cádiz, por virtud de la cual el recurrido vendió la referida tercera propiedad al padre del recurrente por la suma de $1,400 que recibió en efectivo en el acto del otorgamiento.

El recurrido testificó que es dueño de la propiedad objeto de la acción de desahucio la cual compró del recurrente quien la vivía y aún la vive, sin pagarle canon alguno, a pesar de que le había dado seis meses para desocuparla, término que expiró hacía unos 22 meses; negó haberle prestado $3,300 al recurrente y que la venta de dicha propiedad y otras dos se hiciera nada más que para garantizar el pago de dicha deuda; que la casa de Guayama se le vendió a una señora cuyo nombre no recuerda por una cantidad que tampoco recuerda; que no recordaba si el producto de esa venta lo recogió el recurrente excepto en cuanto a la participación de $1,200 del recurrido. En cuanto a la finca en el barrio Pasto de Coamo, testificó que no recuerda de quien es; que se la vendió a un tal Gerardo por una cantidad que no recuerda; aceptó que se trataba de Gerardo Mateo, padre del recurrente; que Gerardo vivía en dicha propiedad cuando se la vendió.

El recurrente testificó que él necesitaba $3,000. Habló con el recurrido y éste le dijo que como tenía "que pagar unos intereses ahí mismo" tenía que tomar $3,300, los que tomó garantizándolos con las tres referidas propiedades; que recibió $3,003 pues el recurrido le cobró $297; que al vencerse los primeros seis meses:

"Entonces la propiedad esa que estaba por los 1,200 pesos se vendió por 2,500 pesos; él cogió 1,200 pesos y me entregaron a mi el resto. Seguí yo pagando de ahí en adelante, por lo que quedé a deber por 2,100 pesos, 180 cada seis meses, cuando lo pude pagar, más los intereses. Me presentó el caso en la Corte de Ponce, entonces yo la casa se la vendí al papá mío. Yo le debía mil cien pesos por esa casa más 300 pesos de intereses, que está la escritura hecha por 1,400 pesos y queda esa sola casa de acá por

los mil pesos. Eso es lo que hay en este caso, Señor Juez. Se salió de las dos primeras, que se vendieron, una se le vendió al papá mío, o él puso el dinero porque yo no lo tenía, entonces para él quedarse con la casa por 1,400 pesos, 300 que se le debían de intereses más la primera que se dio por 2,500 pesos; él cogió los 1,200 y entregándome a mí el resto. Entonces queda la de la Playa de Salinas, que era la última casa, por los mil pesos; esa fue la que se hizo ante el abogado, están incluídas las tres propiedades por una."

Al preguntarle el juez de instancia por qué no se hizo un pagaré hipotecario para garantizar el préstamo, el recurrente contestó:

"Yo nunca había hecho esto ¿entiende? y él me dijo: 'Tiene que hacerse así' y yo . . .

.    .    .    .    .    .    .    .    .

El señor me dijo que había que hacerlo así y yo no creí nunca que era una cuestión de venta, porque las tres propiedades valen mucho más dinero."

Continuó testificando el recurrente que él fue el que vendió las otras dos propiedades; que la que vendió a su padre "fue precisamente . . . por la acción de desahucio que le había puesto él [es decir, el recurrido al recurrente]"; que entonces su padre le dijo "Yo la voy a sacar y se sacaron $300 de intereses más los $1,100 de la casa"; que:

"Como yo no he podido pagar los intereses por la propiedad de Salinas, que está por los mil pesos, no hace mucho él me ofreció a mi darme 220 pesos más y yo le dijo [sic] que no podía porque esa es una casa que a mí me costó mucho más dinero.

.    .    .    .    .    .    .    .    .

Esa casa es mía.

.    .    .    .    .    .    .    .    .

Por eso yo la vivo, porque es mía y estaban las tres hechas en las mismas condiciones. Yo no he podido ahora, 'últimamente, pagar más los intereses.' "

■ Esta prueba, en cuanto a su peso y suficiencia con respecto al conflicto de título que surge de la misma, es similar a la que se presentó en *Sucn. Pedroza* v. *Martínez*, 64 D.P.R. 5, 7–10 (1944), en que revocamos la sentencia del tribunal de instancia porque concluimos que la prueba del título de la demanda, aunque testifical y rebatida era suficiente "para demostrar algún color de la existencia de un derecho, evidencia suficiente para presentar una cuestión genuina de título, un principio de prueba, hechos suficientes para demostrar que sus pretensiones de título no están desprovistas de fundamento" lo que requiere la desestimación del procedimiento de desahucio.

En este caso el demandante no era un tercero que adquirió de otro que a su vez adquirió del demandado, como ocurrió en *Faría* v. *Negrón*, 55 D.P.R. 18 (1939). Además, aparecen en el récord circunstancias demostrativas de que la alegación de título del recurrente fue "robustecida por prueba al efecto de que las pretensiones de título del recurrente son bona fide y por prueba que levante un conflicto de título" como dijimos en *Meléndez* v. *Pacheco*, 75 D.P.R. 95, 99 (1953), y en *Crespo* v. *Irizarry*, 71 D.P.R. 963, 968 (1950). Entre tales circunstancias aparecen las siguientes:

1.—Cuando una propiedad no está inscrita no se puede hipotecar. Además, la propiedad por constituir el hogar del recurrente gozaba de la protección que le brindaba la legislación sobre hogar seguro (31 L.P.R.A. secs. 1851 a 1857). En tales circunstancias los prestamistas suelen exigir una venta simulada en garantía de préstamos.

2.—El recurrente compró la casa de Salinas donde constituyó su hogar en 7 de marzo de 1960 y la escritura de venta de ésta y las otras dos propiedades al recurrido se otorgó siete días después, o sea, en 14 de marzo de 1960. No parece creíble que una casa que constituye el hogar del propietario se venda a los pocos días de adquirida.

3.—Aunque el recurrido presentó la escritura de compra de las tres propiedades y testificó que le permitió al recurrente continuar viviendo la de Salinas por seis meses pero que éste continuó ocupándola sin pagarle canon alguno, dicho recurrido no recordaba a quién y por cuánto vendió la que radicaba en solar del municipio de Coamo. No recordó si el producto de la venta lo recogió el recurrente con excepción de la participación del recurrido que eran los $1,200 que éste había prestado al recurrente. Tampoco recordó quién vivía en la casa en el Barrio Pasto de Coamo ni quién era el dueño luego de él venderla a un tal "Gerardo", ni por cuánto la vendió.

4.—El pago de intereses por adelantado es una condición corriente en el tipo de transacción alegado por el recurrente.

5.—Una de las propiedades en Coamo se vendió por más del doble del precio que aparece en la escritura por virtud de la cual el recurrente vendió dicha propiedad al recurrido, y el excedente lo recibió el recurrente. La venta de la otra propiedad en Coamo se hizo al padre del recurrente por una suma igual al precio que el recurrido aparece pagando por ella más los intereses pagados por adelantado.

En su oposición a la reconsideración solicitada el recurrido se ha limitado a informar que la sentencia "fue dictada según los cánones de la justicia y la ley." En la misma no rebate ni en otra forma impugna los fundamentos de esta opinión.

*En vista de lo expuesto, se dejará sin efecto la sentencia que dictamos en 21 de septiembre de 1967; se revocará la sentencia del Tribunal Superior, Sala de Guayama, de 17 de junio de 1964 en la causa Civil CS-62-725 de dicha Sala; y se desestimará la demanda de desahucio radicada en dicha causa.*

El Juez Presidente Señor Negrón Fernández y el Juez Asociado Señor Santana Becerra no intervinieron.